OPINION
This is an appeal by the State of Ohio of a trial court order suppressing evidence obtained after William Hatch was arrested for aggravated vehicular homicide.
The facts underlying this appeal are essentially not in dispute.
At about 1:10 a.m., on December 21, 2000, Montgomery County Sheriff's Deputy Terry Dull encountered an intoxicated Steven Grant walking in the road in the area of N. Main St. and Melford in Harrison township. Dull pulled his cruiser to the right curb area and placed his four-way emergency flashers on. Dull tried to put Grant in his cruiser in order to get him out of the road. Because Grant was being uncooperative, Dull called for backup. As Dull tried to get Grant into the cruiser, two cars passed the stopped cruiser, slowed down and moved into the far lane. Dull saw a third car approaching, but it did not slow down, but instead abruptly sped up. Fearing that this car would hit the cruiser, Dull tried to move Grant from the passenger door to the front of the cruiser. Despite Dull's efforts to protect Grant, the car struck Grant, throwing him through the air. The accident occurred at 1:16 a.m.
Dull observed that the car that struck Grant was a light-colored, older four-door GM type product and he broadcast that description on his police radio (Tr. 10). Dull said he radioed the dispatch center and let them know that he observed the suspect vehicle continue northbound on Main Street and then turn right into a high rise apartment complex.
Dull testified that he jogged approximately fifty to sixty feet to see the parking lot and he could see a male subject exit a vehicle and start jogging toward the front of the hairs building. Dull said he broadcast this information as well (Tr. 11, 12). Dull further testified that within fifteen to twenty seconds, Deputy John Campbell came on the radio and said that he observed the subject and was in the process of detaining him in the parking lot. Dull estimated thirty seconds to one minute transpired from the accident until Campbell detained the suspect who turned out to be William Hatch (Tr. 12, 13).
On cross-examination, Officer Dull said he didn't specifically see the male subject get out of a vehicle, but he could see him jogging from vehicles in a parking lot to the front of the apartment building (Tr. 19). Dull said he was about one hundred yards away when he observed the subject jogging from the parking lot to the apartment. Dull said the lot was pretty full and the apartment was an "elderly residential area." Dull said he saw no one else jogging in that area (Tr. 21).
Deputy John Campbell testified he was dispatched to the area of North Main Street and Waverly to help Deputy Dull with an intoxicated male. Campbell testified that as he arrived on the scene he heard Dull say on the police radio that he had a pedestrian struck by a vehicle and that the vehicle was going into the parking lot at 4032 North Main Street, a hairs apartment building.
Campbell testified he could hear Officer Dull say over the radio that he could see a male subject get out of a car and walk toward the apartment complex (Tr. 23). Campbell said he entered the parking lot at that moment and observed a white male walking towards the front door of the apartment (Tr. 27). Campbell said he stopped the defendant and noted that he had a strong odor of alcoholic beverages on his breath and on his person (Tr. 25). Campbell also noted that the defendant's eyes were red and glassy (Tr. 37). Campbell then patted down the defendant, handcuffed him, and placed him in the back seat of the cruiser.
Campbell said that he drove the individual back to the rear of the individual's vehicle and he then learned he was the defendant, William Hatch. Campbell said Hatch identified the suspect car as his, and Campbell then called for an evidence technician to process the suspect car. Campbell said he asked the defendant if he would perform some field sobriety tests, but he refused. Campbell said he then transported the defendant to Highway Patrol Post 57 for a breath test. The defendant registered a .114 on the breathalyzer examination. Campbell testified that after they left the Post, the defendant volunteered that "the victim stepped in front of him" (Tr. 26).
On cross-examination, Campbell reiterated that Officer Dull stated on the radio that he saw the suspect vehicle park and someone getting out of it and he was in an excited state saying "he's walking toward the building. He's going to make it in the building. We need to get somebody there now" (Tr. 28).
Campbell testified that Dull was standing approximately twenty to twenty-five feet from the driveway entrance and was still talking on his police radio. Campbell said there was only one entrance in and out of the parking lot. He said Deputy Dull was so focused on the suspect that he didn't realize Campbell had pulled up into the parking lot (Tr. 33).
Campbell said that the defendant had not made it through the first row of parked vehicles heading toward the front door. Campbell said, as he drove down the driveway, the defendant looked back at him and started to pick up his pace towards the front door (Tr. 33). Campbell said he stopped the defendant about fifteen feet from the front door of the apartment. Campbell said he handcuffed the defendant and put him in the back seat of his cruiser. Campbell said he then pulled his cruiser around the parking lot and then asked the defendant to identify his car. The defendant pointed to his four door brown Chevy Cavalier.
In granting defendant's suppression motion, the trial court stated the following:
 Defendant argues that the actions of Deputy Campbell amounted to an arrest of defendant without probable cause. That argument has two (2) elements; (1) lack of probable cause to believe Defendant was the driver of the hit-skip car (this relates to all three (3) indicted charges); and (2) lack of probable cause for arrest of defendant for a criminal offense with a DUI predicate (the aggravated vehicular assault charge).
Regarding the issue of whether the State met its burden of establishing identity of the perpetrator, the Court finds that it has by a preponderance of the evidence. There is substantial circumstantial evidence that Defendant was the driver of the hit-skip car, although admittedly this is a close call. Defendant's motion to suppress on this issue is OVERRULED
Regarding the issue of whether the State met its burden of establishing proximate cause for the arrest of Defendant for aggravated vehicular assault, the Court finds that it has not. The actions of Deputy Campbell in pulling up to Defendant, detaining him, patting him down, cuffing him, placing him in the cruiser, and then transporting him in the apartment complex parking lot to Defendant's car amounted to an unlawful seizure of Defendant that amounted to an arrest without probable cause. Although Deputy Campbell testified he smelled an odor of an alcoholic beverage on Defendant and observed glassy, bloodshot eyes, the evidence was not clear as to when these conditions were noticed by Deputy Campbell. Were they noticed before or after Defendant was cuffed, placed in the cruiser and transported around the parking lot and further detained for backup? The State has therefore not established probable cause to arrest Defendant for the aggravated vehicular assault.
The consequence of this unconstitutional seizure of Defendant is the suppression of the breath-test result and all observations of defendant by any law enforcement officer after Deputy Campbell commenced his transport of Defendant to his car in the parking lot. The Court also suppresses all statements made by Defendant after the point in time referenced in the preceding sentence. The Court specifically references an answer given by Defendant to Deputy Campbell's question, "Which car is yours?" This question was posed to Defendant without Miranda warnings while Defendant was handcuffed in the cruiser and being transported in the apartment complex parking lot. This was a question designed to elicit an incriminating response and not "on-scene" questioning typically allowable without Miranda at a traditional stop or accident scene. The Court SUSTAINS the motion to suppress on the above issue.
We agree with the trial court that Deputy Campbell had substantial circumstantial evidence that the defendant was the driver of the hit-skip car. Accordingly, Campbell has sufficient probable cause to arrest the defendant for failing to stop after an accident involving injury to persons or property in violation of R.C. 4549.021, a felony of the fifth degree.
We agree with the trial court that the defendant was "arrested" when he was handcuffed and placed in the rear of Campbell's cruiser.
The existence of an arrest is dependent upon the existence of four requisite elements: (1) an intent to arrest; (2) under real or assumed authority; (3) accompanied by an actual or constructive seizure of the person; and, (4) which is so understood by the person arrested. State v.Barker (1978), 53 Ohio St.2d 135.
A seizure is an arrest rather that a Terry detention if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on his freedom of movement of the degree the law associated with formal arrest. United States v. Carroll-Franco (5th Cir. 1988), 848 F.2d 536.
In this case, the defendant was stopped by a police officer and was informed that he was stopped because "he just hit a guy up there in front of a deputy" and then was patted down, handcuffed, and placed in a police cruiser.
A reasonable person in the defendant's position would reasonably conclude from this circumstance that he was under arrest when he was accused of a hit and run and then handcuffed and placed in a police cruiser. We agree that the defendant's statements concerning the location of his car after questioning by Deputy Campbell should be suppressed.
We disagree that Deputy Campbell did not have probable cause to arrest the defendant for also operating a motor vehicle under the influence of alcohol. Prior to the defendant giving his permission for a breath test at the police station, police knew the defendant had struck a pedestrian standing next to a police cruiser with its four-way emergency flashers flashing after the defendant sped up and abruptly switched lanes at 1:10 in the morning, that the defendant fled the scene, and when found in a nearby parking lot very shortly thereafter, smelled heavily of alcohol and had red and glassy eyes.
The State's single assignment that the trial court erred in finding that Officer Campbell did not have probable cause to arrest the defendant is sustained. The defendant's breathalyzer test result and any spontaneous volunteered statements given by the defendant after his arrest are admissible in evidence against him.
The judgment of the trial court is Reversed and Remanded for further proceedings.
WOLFF, P.J., and FAIN, J., concur.